EDWARD W. MORRISON

*v.*

JAMES W. HEDENBERG.

*Filed at Ottawa May 13, 1891.*

1. PRACTICE—*evidence admitted subject to examination as to correctness—effect of stipulation.* Where counsel for defendant in ejectment admits in open court that the plaintiff is entitled to recover unless a copy of a plat is found to be incorrect or the original is not genuine, and the court takes a verdict for the plaintiff with the understanding that a new trial shall be awarded if the copy is not correct and the original not genuine, and time is given for investigation of the matter, and on the day appointed no objection is urged to the original map or the copy, there will be no error in rendering judgment in favor of the plaintiff and refusing a new trial.

2. Where a party stipulates, on the trial of a cause, that the plaintiff is entitled to recover unless a certain other fact is found to exist, he will be held as admitting the plaintiff's right to recover his claim or demand in full on the contingency named, and can not afterward raise any question as to the extent of the recovery.

3. SAME—*trying case out of its order—sufficient cause—discretion of court.* The statute relating to the order in which cases shall be tried or disposed of, not attempting to determine what shall constitute sufficient cause for trying or disposing of a cause out of its order on the docket, that matter is left to the sound discretion and judgment of the court in which the suit is pending, and the action of the court can not be assigned for error except when its discretion is abused.

4. As ground for trying an ejectment suit before it was reached in its order, it was shown that the city of Chicago was the real plaintiff in interest, and that it had purchased the premises to be used as a part of a site for important public works which it was in the process-of constructing, and that until the possession of said premises could be obtained the construction of said works would be delayed, etc.: *Held,* that the facts showed ample grounds for the court to award a prompt and speedy trial.

5. SAME—*withdrawal of juror—discretion of court—whether error.* The withdrawal of a juror where a party is surprised after going into trial, is usually, if not uniformly, a matter resting in the sound discretion of the trial court, and a refusal to permit a juror to be withdrawn can not usually be assigned for error. When a party otherwise gains all the benefit sought by the motion to withdraw a juror, he will have no ground to complain of the refusal of such motion.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. S. K. Dow, for the plaintiff in error.

Mr. AZEL F. HATCH, for the defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action of ejectment, brought by James W. Hedenberg against Edward W. Morrison and Patrick O'Laughlin, to recover possession of the west ten feet of lots 34 and 35, of Hedenberg's subdivision of block 18, in the School Section Addition to Chicago. The defendants pleaded not guilty, and trial being had before the court, a jury being waived, judgment was rendered in favor of the plaintiff. The defendants having taken a new trial under the statute, the cause was again tried before the court and a jury, and said trial having resulted in a verdict and judgment for the plaintiff, defendant Morrison now brings the record to this court by writ of error.

The first assignment of error upon which reliance is placed calls in question the action of the court in trying the cause out of its order on the docket, against the objection and exception of the defendants. It appears that on the 22d day of November, 1889, the plaintiff moved the court to set said cause for trial out of its order on the docket, and in support of said motion presented various affidavits from which it appeared, in substance, that the plaintiff, on the 7th day of May, 1887, entered into a contract for the sale of the premises in controversy, with other lands, to one Shedd, and that on the 17th day of September, 1887, Shedd entered into a contract for the sale of said premises to the city of Chicago, the conveyances provided for in said contracts to be made as soon as possession of said premises could be obtained; that the plaintiff, by his contract, agreed to institute and prosecute, with reasonable diligence, legal proceedings to obtain possession

thereof; that he thereupon instituted this suit and had prose-
cuted it with diligence; that said lot 34 is a part of the prem-
ises occupied and to be occupied by the city of Chicago in the
construction of water-works; that said city, on the 31st day
of May, 1888, began the construction of its said water-works
on said site, and that said building had progressed nearly to
completion, the walls being built on all sides excepting the
south 110 feet of the west wall which is to be built on said
west ten feet of said lot 34; that the portion of the wall of
said building to be located on said strip of land had not been
built for the reason that the city had not been able to obtain
possession of said strip of land, and that said building could
not be completed without the possession thereof; that great in-
jury would result if said building should be allowed to remain
in its then present condition; that said water-works were a
part of the general system of water-works of the city of Chi-
cago to supply the people with water for all purposes; that the
construction of said water-works on said premises had been
determined upon for the reason that said premises were in the
heart of a district in Chicago which had no adequate water
supply, and which contained a large number of wooden build-
ings, and that by reason of the lack of water supply, the dan-
ger of fire was greatly increased, and the comfort and health
of the community endangered.

Upon the facts shown by said affidavits, the court granted
said motion, and set said cause down for trial, out of its order
on the docket, on the 10th day of December, 1889. The trial
was commenced December 19, 1889, the cause not having
then been reached in its order on the docket, the defendants
objecting and excepting to a trial at that time.

The fourteenth section of the Practice Act requires the clerks
of the courts to keep dockets of all causes pending in their re-
spective courts, in which causes shall be entered in their order
according to the date of their commencement, and section 16
provides that "all causes shall be tried or otherwise disposed

of in the order in which they are placed on the docket, unless the court, for good and sufficient cause, shall otherwise direct."

The statute does not attempt to determine what shall constitute sufficient cause for trying or otherwise disposing of a suit out of its order on the docket, but that matter is left to the sound discretion and judgment of the court in which the suit is pending. Unless then it is clearly shown that the court has abused its discretion in trying a suit out of its order, its action will not be interfered with.

We are of the opinion that good and sufficient cause was shown in this case for the exercise of this discretion. While it is shown that the plaintiff is the owner of the legal title to the premises in question and therefore the proper party to institute and prosecute a suit for their recovery, still the facts established by the affidavits show that the real party in interest is the city of Chicago; that said city has obtained an executory contract for the conveyance to it of said premises, and that its purchase of said premises is for the purpose of making use of them as a part of the site of important and necessary public works which it was in process of constructing, and that until the possession of said premises could be obtained, the construction of said works would necessarily be delayed, and both public and private interests be subjected to great inconvenience, danger and possible damage. It would be difficult to find a civil case where the facts would more clearly warrant the court in awarding a prompt and speedy trial than do those appearing here.

The counsel for the plaintiff in error asks a reversal of the judgment on the ground that the evidence fails to support it. It was admitted upon the trial that the evidence introduced by Hedenberg, the plaintiff below, established title in fee in him to all of said block 8, School Trustees' Addition to Chicago, the only question in dispute being, whether that portion of lots 34 and 35 of Hedenberg's subdivision of said block is situate within and is a part of said block. Said block 18 is

bounded on the north by Harrison street, on the east by Des-plaines street and on the west by block 7 in said addition, said block 7 being bounded on the north by Harrison street and on the west by Halsted street. As platted by the school trustees, said blocks 7 and 18 lie adjacent to each other, and are sep-arated by no street or alley. The claim of the defendants at the trial was, that the west line of block 18 was not far enough west by ten feet to include all of lots 34 and 35 of Hedenberg's subdivision of said block 18, those being two of the westerly lots of said subdivision, and consequently that said strip of land ten feet wide was not a part of the premises to which the plaintiff had proved title.

To settle this disputed point, the plaintiff offered in evidence a document purporting to be a copy of a map of section 16, township 39, north, of range 14, east of the 3d principal me-ridian, made by Jeddiah Wooley Jr. county surveyor of Cook county, March 15, 1833, certified by the Auditor of Public Ac-counts to be a true, full and correct copy of said map now on file and forming a part of the records of his office. Accom-panying said map was also a certified copy of a letter on file in the Auditor's office written by Richard J. Hamilton to the Auditor under date of March 23, 1834, in relation to sales of portions of said section and to said map.

It seems that said map had long been supposed to be lost or missing from the files and records of the Auditor's office, and that thorough searches in said office had failed to dis-cover it. On production therefore of what purported to be a certified copy of said map, the counsel for the defendant claimed to be taken by surprise, and expressed a grave doubt as to the genuineness of the original instrument of which the document offered was a certified copy. He therefore moved the court to have a juror withdrawn and the cause continued for the purpose of giving him an opportunity to make investi-gation as to the authenticity of the map now appearing on file in the Auditor's office. In submitting said motion, counsel

said: "Of course if that original map could be produced, and if this is a true copy of said map, it settles this case at once." The court then asked him if the copy produced showed the size of the block, to which he replied: "Yes, sir, just the thing we have been disputing. That is exactly what was in dispute before. This Jeddiah Wooley map has these figures on it which were disputed; the only figures on that, the real map, was the figures of the blocks, and no figures of feet as to the dimensions at all." The court then put to said counsel this question: "Then your understanding is, that if this map turns out to be all right, that settles the case?" to which counsel replied: "There is no question about it, if Hamilton, the school commissioner, wrote this letter so near the day of sale. Block 18 was sold 23d day of October, 1833; the next day block 7 was sold to my client's father, and on March 23, 1834, Hamilton wrote the letter to the State Auditor in which he said, 'I herewith send you a map,' etc. Now if that map were here it would settle this case; I would not hesitate a moment; it would control this case absolutely."

The court, instead of granting the motion to withdraw a juror and continue the case, entered an order, in substance, that, the defendants claiming to be surprised by the introduction of a certified copy of said map and letter, and it appearing that if said map is correct and genuine, it is decisive of the case, and the defendants claiming that the original is not in the Auditor's office and that said copy is not correct, and asking time to investigate in that respect, it is ordered that a verdict be now rendered on the evidence already in, and that the defendant's counsel have until January 15 to investigate said matter, and if by that time he can show any facts tending to prove that the original map of which the document offered in evidence purports to be a copy is not in the Auditor's office in Springfield, or that said document is not a copy of the original, or any other facts that ought to be submitted to a jury in connection with said map, that then the court will set

aside said verdict and grant a new trial, otherwise judgment is to be entered upon the verdict.

The jury thereupon rendered a verdict in favor of the plaintiff, and the defendants then and there entered their motion to set aside said verdict and for a new trial. On the 17th day of January, 1890, nothing being shown entitling the defendants to a new trial under the terms of said order, final judgment was entered in favor of the plaintiff. It is now claimed by defendants' counsel that the plat of Hedenberg's subdivision shows a frontage on Harrison street of 424.75 feet, while the Jeddiah Wooley map shows only a frontage of 422.72 feet, and it is therefore argued that judgment should have been rendered for the defendant for the westerly 2.03 feet of the strip of land in controversy. We are of the opinion that the admissions of the defendants' counsel at the trial preclude any such claim. The admission was, that if what was claimed to be the Jeddiah Wooley map was genuine, it was conclusive of the case. This, under all the circumstances, must be construed as an admission that if said map proved to be genuine, it established the plaintiff's right to recover the entire premises in controversy. Any other interpretation would leave the case entirely open and unsettled, so far at least as the 2.03 feet now claimed is concerned, since, admitting the discrepancy between the width of block 18 as shown by the Wooley map and the Hedenberg plat to be as claimed, the question would still remain to be settled by further and extrinsic evidence whether the map and plat did not locate the west line of the block at the same place. The discrepancy, if it exists may have resulted from a wrong location by the plat of the east line of said block, or from errors in the measurement of the intervening lots. The Wooley map was conclusive of the case only upon the assumption that the west line of said block as established by said map was coincident with it as shown by the Hedenberg plat, and that must be taken as the legal effect of the admission. No attempt having been made to impeach the genuineness or authenticity

of the Wooley map, the plaintiff, by the defendant's solemn admission made at the trial, is entitled to recover.

It is claimed that the court erred in not allowing a juror to be withdrawn. Withdrawing a juror is usually if not uniformly a matter resting in the sound discretion of the trial court, and a refusal to permit a juror to be withdrawn can not usually be assigned for error. But in this case, the only purpose for which counsel desired to have a juror withdrawn and the case continued was, to enable him to make investigations as to the genuineness of the Wooley map, and by the order of the court under which the verdict was rendered he was allowed nearly one month for that purpose. It was not suggested to the court below nor is it here, that the time given was not amply sufficient, and as no attempt was made at the hearing of the motion for a new trial to impeach the genuineness of said map, it must be assumed that the investigations made by counsel satisfied him that the map was genuine. He was therefore accorded all the relief that the withdrawal of a juror would have given him, and consequently has no ground of complaint in that respect.

There is no error in the record, and the judgment will be affirmed.

*Judgment affirmed.*